_Judge Gaines_

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
AUSTIN

GROVER SELLERS
Attorney General

Honorable R. N. Jones, President
Texas College of Arts and Industries
Kingsville, Texas

Dear Sir                    Opinion No. O-6753

                    Re: Whether surplus money in bond fund
                        for retirement of revenue bonds is-
                        sued by the Texas College of Arts
                        and Industries can be invested in
                        Series F Government Bonds.

        We have your opinion request reading as follows:

        "I shall appreciate having your ruling upon the
legality of the Texas College of Arts and Industries'
purchasing Series F Government Bonds with a surplus
which has developed in the bond fund, according to
the contract of March 15, 1940, between the College
and the Northwestern Mutual Life Insurance Company
of Milwaukee.

        "A transcript of the contract is on file in the
State Comptroller's Office. Mr. R. S. Emerson of
Emerson & Company, Capital National Bank Building,
Austin, will be able to give you a background for
this request. Basically, it is that a considerable
sum has accumulated in the bond reserve, with the
result that it is lying idle and accruing no inter-
est.

        "According to information received from Mr. Em-
erson, it is my understanding that the insurance com-
pany has no reservations concerning the purchase of
Series F. Bonds, which of course would be immediately
placed in the bond fund reserve, providing there is
nothing in the contract which would be legally inter-
preted as preventing such action."

        Your inquiry raises two questions. First, whether the
bond contract between the Texas College of Arts and Industries and
the Northwestern Mutual Life Insurance Company authorizes or pro-
hibits the investment of the sinking fund for its revenue bonds in

Series F Government Bonds. Second, if the bond contract is silent on the question, whether the Board of Directors of the College would have the discretion under their general statutory powers to make the investment. We perceive that it can make no difference that the proposed investment is in United States Government Bonds, rather than municipal or other type of bond, if neither the contract nor the statutes prescribe the form of the investment.

Section 3 of the bond transcript, passed by the Board of Regents of the College of Arts and Industries on March 30, 1940, provides that the interest on said bonds shall be four per cent (4%) per annum, payable on March 15 and September 15 of each year. Said section also sets out the maturity dates of the whole issue of bonds.

Section 11 of said bond transcript provides as follows:

"Section 11: The amount of revenues to be paid into the Bond Fund pursuant to the requirement of the last above section shall equal not less than $704.67 per month for the months of March to August 1940, both inclusive, and shall equal not less than $1225 per month for each month thereafter. In the event that the gross revenue of any month, after making the required payment into the Operation and Maintenance Fund shall be insufficient to make the aforesaid payments in full into the Bond Fund, any such deficiency shall be paid into the Bond Fund from the first gross revenues thereafter received and applicable to that purpose. Payments into the Operation and Maintenance Fund and Bond Fund shall be made on the last day of each month.

"The payments into the Bond Fund above required shall not be diminished by reason of sums paid into the Bond Fund from any other source or sources, it being the intent hereof that payments into said Fund from other sources and the surplus amounts placed in the Bond Fund by reason of excess in the above required payments over actual principal and interest requirements shall be held in said Bond Fund as a reserve for contingencies, so long as any of the bonds herein authorized are outstanding. The money in the Bond Fund shall be

C
O
P
Y

> used solely for the purpose of paying the principal
> of and interest on said bonds, provided, however,
> that when there is in the Bond Fund an amount fully
> sufficient to pay all interest on and the principal
> of any outstanding bonds issued hereunder to become
> due thereafter, no further sums need to be paid into
> the said Bond Fund."

The foregoing provisions of the bond contract give the Board of Directors of Texas College of Arts and Industries no authority to invest any of the money in the Bond Fund. It is our opinion also that the underscored language of such contract prohibits any investment of such moneys.

The statutes are silent on the subject of investment of the sinking funds of revenue bonds. Texas Colleges and Universities are authorized under Articles 2603e and 2909a, Vernon's Annotated Civil Statutes, to issue such bonds for the purpose of acquiring or constructing certain named college buildings. The governing board of the issuing institution is given broad discretion "in fixing the form, conditions and details of such bonds or notes." Sec. 3, Art. 2603e; Sec. 3, 2909a. Your Board of Directors would have been authorized to provide in your contract with Northwestern Mutual Life Insurance Company that it might invest the Sinking Fund for the revenue bonds or part thereof in Government Securities. Lower Colorado River Authority vs. Chemical Bank and Trust Co., Trustee, 185 S. W. (2d) 461. The Board's discretion in such matters is, however, not unlimited. The buildings which are purchased with the proceeds of the revenue bonds are "owned and held" by the school as property of the State. The buildings are public property and are exempt from taxation. San Antonio Independent School District vs. Water Works Board of Trustees, et al, 120 S. W. (2d) 861, error refused. The fact that the bonds are payable solely from the revenues from the buildings purchased and constitute no liability of the State or the school, does not make the moneys collected for retirement of the bonds lose their character as public funds. The governing board in charge of the issuance of the revenue bonds and the collection of the funds for their retirement owes a duty to the public as well as to the investors. They are in control of public property and are dealing with public funds. They occupy a quasi-official position. 34 Tex. Jur. 473. They could not enter into contracts which are against public policy. 34 Tex. Jur. 453, 454. We believe that a contract authorizing such boards to invest in government bonds would be valid. We have seen, however, that the contract involved here contains no such authority but, to the contrary, limits the use of the money in the Bond Fund to the payment of principal and interest.

C
O
P
Y

Honorable B. N. Jones, page 4

Since there is no statute authorizing such boards to invest all or any part of the Sinking Fund for revenue bonds, we are of the opinion that no such authority exists.

You are accordingly advised that the proposed purchase of Series F Government Bonds would not be authorized.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By (Signed) Fagen Dickson

Fagen Dickson
Assistant

FD/JCP

APPROVED
Opinion
Committee

By (Signed) BAO 3
Chairman

APPROVED OCT 5, 1945

(Stamped) Carlos C. Ashley
First Assistant
Attorney General

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE

Copy by nec
1/7/46